E.S. v T.S. (2024 NY Slip Op 50287(U))

[*1]

E.S. v T.S.

2024 NY Slip Op 50287(U)

Decided on March 18, 2024

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 18, 2024
Supreme Court, Westchester County

E.S., Plaintiff,

against
T.S., Defendant.

Index No. 64972/2020

James L. Hyer, J.

The following documents, numbered 1 to 23, were considered in connection with Plaintiff's Order to Show Cause, dated January 8, 2023, (hereinafter referred to as "Motion Sequence #1"), seeking, inter alia, entering an Order:
1. My ex-husband has not paid maintenance in 18 month totaling $28,900. He has also not provided proof of life insurance as required by our divorce that was finalized in 2020 as require, I has sent monthly letters to inform him of his default. His original monthly amount was $2,300 per month on 3/25/22. I purchased a family cabin which resulted in the payment being reduced to $1,625; and
2. Such other and further relief as may be just, proper and equitable.
PAPERS NUMBERED
Order to Show Cause/Plaintiff's Affidavit in Support 1-21
Exhibits A — S
Opposition Submission 22
Affidavit in Reply 23
 RELEVANT FACTUAL AND PROCEDURAL HISTORY
On November 19, 2020, this action was commenced with the filing of a Summons and Complaint, asserting that the parties had been married on July 30, 1994. The Complaint further asserted that the Plaintiff was seeking the entry of a Judgment of Divorce based upon New York State Domestic Relations Law (hereinafter "DRL") § 170(7) in that the parties' marriage had irretrievably broken down for a period in excess of six months which would incorporate by reference the terms set forth within an Agreement entered into between the parties pursuant to DRL § 236(B)(3), (hereinafter "Agreement").
On November 24, 2020, the following documents were filed with the Court: (1) Agreement, (2) Proposed Certificate of Dissolution, (3) UCS-111, (4) Proposed Findings of Fact & Conclusions of Law, (5) Proposed Judgement of Divorce, (6) Note of Issue, (7) Request for Judicial Intervention; (8) Affidavit of Plaintiff; (9) Affidavit of Defendant; (10) Addendum to Stipulation of Settlement/Agreement Re: Compliance with Domestic Relations Law 255(2); (11) Affirmation (Affidavit) of Regularity; and (12) Part 130 Certification.
The Agreement sets forth the following recitals and understandings of the parties in the beginning of the document being, in part:
"WHEREAS, the parties were duly married to each other at North Salem, New York on July 30, 1994 in a civil ceremony; and
WHEREAS, there are two emancipated children of the marriage, namely: E.B.S. born on xx/xx/1996; and J.R.S., born on xx/xx/1998; and there are no expected additional children of the marriage; and
WHEREAS, certain unhappy and irreconcilable differences have arisen between them, as a result of which they have separated and live separate and apart from each other; and
WHEREAS, it is the parties' desire to enter into an agreement under which all of their rights and obligations to each other, arising out of the marriage relation, or otherwise, shall be fully described; and
WHEREAS, the parties have had full and complete disclosure and discovery of all documents and issues relative to the dissolution of their marriage as well as encouragement and opportunity to obtain counsel from their attorneys and any other professional of their choosing prior to executing this Agreement; and
WHEREAS, the parties represent that each of them fully understands all of the terms and obligations of this Agreement and each believes that the terms and obligations herein are fair, just and reasonable to his/her overall best interests;
NOW, THEREFORE, in consideration of these facts and the promises contained in this Agreement, the parties mutually agree as follows:
The Agreement contains several provisions confirming the parties acknowledgement of their rights in the negotiation and execution of the settlement terms set forth within the document, including but not limited to: (1) In Article XI(9) the parties confirm that they have engaged in thoughtful consideration of the terms of the Agreement; (2) In Article XII of the Agreement both parties expressly acknowledge their rights to legal counsel and they have waived the right to such counsel; (3) In Article XIII the parties acknowledge the right to full financial disclosure, waive further disclosure, again acknowledge their right to counsel in review of the document, and; that the Agreement has been executed without fraud, undue influence, duress or impairment.
Article XXV confirms that the terms set forth within the Agreement are the entire understanding of the parties and Article XVII pertains to the parties' understandings as to any future modification or waiver pertaining to the Agreement:
"Neither this Agreement nor any provision hereof shall be amended or modified except by an agreement in writing duly subscribed and acknowledged with the same formality as this agreement, except as expressly provided herein. Any waiver by either party of any provision of this agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and [*2]the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, but the same shall continue in full force and effect."
Article XXIV provides the manner within which a default of either party is to be addressed:
"1. In the event that either party defaults with respect to any obligation of his or hers under this Agreement and said default is not remedied within thirty (30) days after sending of a written notice by registered mail to the defaulting party, specifying such default, the defaulting party shall indemnify the other against, or reimburse him or her for the reasonable counsel fees and all other actual expenses resulting from or made necessary by the bringing of any lawsuit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the non-defaulting party as determined by the Court.
2. It is understood and agreed that in the event a suit or other proceeding shall be instituted by either party to enforce any of the terms, covenants, or conditions of this Agreement as a result of the party being in default of any of his or her obligations under this Agreement and, after the institution of such action or proceeding and before judgment is or can be entered, the defaulting party shall comply with such term(s) or conditions(s) of this Agreement, then, and in such event, the suit, motion or proceeding instituted shall be deemed to have resulted in a judgment, decree or order in favor of the moving party, then the moving party shall be entitled to the reasonable attorney's fees and expenses set forth in Paragraph 1 of this Article.
3. The parties acknowledge and agree that the rights conferred upon them under the above paragraphs are in addition to, and do not place limitations upon, any other rights which they may have under applicable law to seek counsel fees."
With respect to the parties' obligations to each other pertaining to life insurance Article XX provides the following:
Life Insurance With Wife as Beneficiary for the Period of Maintenance
1. The Husband hereby agrees to provide and maintain in full force and effect and will not pledge, hypothecate or encumber the life insurance policy described in this Article as Schedule A below, insuring his life with actual death benefits detailed below with the Wife to be designated as beneficiary in the amount of $248,400 representing the amount of maintenance payments to be paid from Husband to Wife. The Husband shall have the right to reduce the death benefit amount to the Wife by $27,600 per year for every year that maintenance payments have been paid. The Husband represents that said policy is in full force and effect, unencumbered and premiums fully paid. The Husband agrees to pay or cause to be paid all premiums, dues and/or assessments which may become due and owing on said insurance policies at least 15 days prior to the end of the grace period for making said payments, and he shall deliver to the Wife upon request, written proof of payment thereof.
2. The Husband hereby authorizes the Wife to obtain direct confirmation from his insurance carrier or from his employer or union with respect to any group life insurance provided by his employer or union in order to confirm his compliance with the provisions of this Article and further agrees that he will, upon demand, execute and deliver to the Wife without charge whatever instruments, documents or authorizations may be necessary or desirable in order that the Husband's compliance with this Article may be proven. The Husband shall have the right to substitute policies providing the above insurance coverage only if he first furnishes to the Wife written proof of the existence of the substitute policies in conformity with his obligations hereunder. The Husband shall have the obligation to add other policies upon the expiration of the current policy in order to remain in compliance with this Article for the duration of his maintenance payments to the Wife and must provide to the Wife written proof of the existence of any new policy in conformity with his obligations hereunder.
3. In the event of a failure of the Husband to maintain life insurance as defined in this Article, the Wife shall have the right to seek compliance during the lifetime of the Husband. If such compliance is not completed within the lifetime of the Husband, the Wife shall have a charge against the Husband's estate.
Schedule A — Life Insurance Policy on Husband with Wife as Beneficiary Company: AIG***Type: term*** Policy #: [redacted]***Death Benefit: $248,400"
Article IX of the Agreement sets forth the spousal support and maintenance obligations of the parties to each other, providing:
"1. Having full disclosure of all financial issues and taking into consideration all relevant facts and circumstances, including but not limited to, the parties having received Notice of Guideline Maintenance in compliance with the Maintenance Guideline Law Chapter 269, Laws of 2015 and also discussions in mediation, the financial information annexed hereto and the financial, employment and employment potential, the health of both parties, and in reliance upon the distribution of marital property/assets herein, the parties hereby agree that, from the date of the execution hereof, the Husband shall pay to the Wife for her support and maintenance the sum of $2,300 per month or pro-rated parts thereof on the first day of each month until the first to occur of: (a) nine (9) years from the date of the execution hereof (b) the remarriage of the Wife ("Remarriage of the Wife" as used everywhere in this Agreement shall be deemed a remarriage of the Wife, regardless of whether said remarriage shall be void or voidable or terminated by divorce, annulment or otherwise and shall also be deemed to include circumstances contemplated by Domestic Relations Law § 248 as it presently exists and as it may hereafter be amended (c) the cohabitation of the Wife with a paramour, which cohabitation would reasonably be considered "tantamount to marriage" and which demonstrates that the Wife is "holding herself out" as being married which shall be defined as including, but not limited to, sharing housing and other household expenses, medical insurance benefits, and bank accounts which results in an economic benefit to the Wife not anticipated in negotiating maintenance payments and/or the continued cohabitation with a paramour for a period greater than 180 days in a 12-month period (d) the death of the Husband whereby there is a life insurance policy in place pursuant to Article XXIV hereof which satisfies the Husband's maintenance obligation in the event of his death
2. All payments by the Husband to the Wife under this Agreement shall be made by or [*3]before the first of each month by personal check or money order in the amount of $2,300 and forwarded to the Wife at her residence or at such other place for which she shall have given the Husband prior written notice or by electronic or other direct deposit into a bank account designated by the Wife."
On December 22, 2020, in the form and substance proposed the Findings of Fact & Conclusions of Law and Judgment of Divorce were entered, (hereinafter "Judgement"). The Judgement specifically notes that the terms set forth within the Agreement shall be incorporated by reference as though fully set forth therein.
Motion Sequence #1 is supported by a number of exhibits including Notices of Default with certified mail receipts sent by Plaintiff to Defendant, including: (1) June 14, 2022; (2) July 5, 2022; (3) August 1, 2022; (4) October 1, 2022; (5) November 1, 2022; (6) December 1, 2022; (7) January 1, 2023; (8) February 1, 2023; (9) March 1, 2023; (10) April 10, 2023; (11) May 1, 2023; (12) June 1, 2023; (13) July 1, 2023; (14) August 1, 2023; (15) September 1, 2023; (16) October 1, 2023; (17) November 1, 2023; (18) December 1, 2023; and (19) January 1, 2024, (hereinafter collectively "Default Notices"). 
In further support of Motion Sequence #1, Plaintiff submitted an Affidavit asserting that the Defendant has failed to pay her maintenance for eighteen months totaling $28,900.00, noting that the original amount was $2,300.00 monthly, but due to her purchase of a family cabin on March 25, 2022, this monthly amount was reduced to $1,625.00. Plaintiff further asserts that since the entry of the Judgement, Defendant has failed to provide proof of life insurance as required and she has sent notices of default as required by the Judgment.
On January 10, 2024, Motion Sequence #1 was conformed to provide: (1) January 23, 2024, as the return date; and (2) January 18, 2024, as the date by which Plaintiff is to serve Defendant with Motion Sequence #1.
On January 23, 2024, the self-represented Plaintiff appeared, was presented with a Self-Represented Litigant Information Sheet which was marked as Court Exhibit #1 and failed to provide the Court with an Affidavit or other proof of service of Motion Sequence #1 on Defendant as required by the Court. The Court entered an Order directing: (1) Plaintiff shall serve Motion Sequence #1, including all supporting documents, on Defendant by overnight delivery and e-mail by January 26, 2024, and shall file an Affidavit of Service with a copy of the overnight delivery tracking receipt and copy of the e-mail by January 26, 2024; (2) Defendant shall file with the Court and serve any opposition to Motion Sequence #1 by February 9, 2024, service to be effectuated on Plaintiff by overnight delivery, and shall file an Affidavit of Service with a copy of the overnight delivery tracking receipt by February 9, 2024; (3) Plaintiff shall serve any reply to Motion Sequence #1, on Defendant by overnight delivery and e-mail by February 23, 2024, and shall file an Affidavit of Service with a copy of the overnight delivery tracking receipt and copy of the e-mail by February 23, 2024; and (4) The adjourned return date for Motion Sequence #1 shall be February 23, 2024, at which time no appearances shall be required, no oral argument shall be received, and a decision shall be entered on submission.
On February 13, 2024, the self-represented Defendant filed an unsworn letter to the Court, (hereinafter "Opposition"). In the Opposition Defendant acknowledges the terms of the Agreement pertaining to his obligations for spousal support payments due to Plaintiff, asserts that a change in circumstances warrants a modification, and fails to respond to the Plaintiff's request for proof of life insurance.
On February 15, 2024, Plaintiff filed an Affidavit in Reply. The Court has received no [*4]additional documents pertaining to Motion Sequence #1.

 FINDINGS OF FACT AND CONCLUSIONS OF LAW
To the extent that the Opposition included a request for affirmative relief which was not set forth in the form of a cross motion, while a Trial Court has discretion to entertain requests for relief that do not meet the requirements of New York State Civil Practice Law and Rules § 2215, this Court declines to do so and denies the application for affirmative relief by Defendant. See, Smulczeski v. Smulczeski, 10 N.Y.S.3d 249 [2d Dept 2015]. Moreover, as the Opposition submitted by Defendant is in the form of a letter, which is not notarized and contains unsworn statements which do not constitute evidentiary proof in admissible form, the Opposition must be disregarded by this Court. See, Thomas v. Woodmere Health Care Center, Inc., 685 N.Y.S.2d 258 [2d Dept 1999].
Turning to the relief sought by Plaintiff, a stipulation of settlement is a contract enforceable according to its terms. See, Tuchman v. Tuchman, 162 N.Y.S.3d 414 [2d Dept 2022], quoting, Stein v. Stein, 12 N.Y.S.3d 284 [2d Dept 2015]. Such agreements are subject to the limitations set forth within General Obligations Law § 5—311 which prohibits spouses from contracting to dissolve a marriage and relieve either of his or her liability to support the other in such a manner that he or she will become incapable of self-support and therefore is likely to become a public charge. See, Lasky v. Lasky, 622 N.Y.S.2d 649 [Sup Ct, Westchester County 1994]. Here, the Court has been provided with no evidence to suggest that the subject Agreement is unenforceable, but only that Defendant seeks to modify the terms contained therein.
The terms of a stipulation of settlement which are incorporated but not merged into a judgment of divorce operate as contractual obligations binding upon the parties which are to be interpreted by the Court in accordance with its plain and ordinary meaning, and where the document is clear and unambiguous on its face, the intent of the parties must be cleaned from the four corners of the instrument and not from extrinsic evidence. See, Ackerman v. Ackerman, 919 N.Y.S.2d 209 [2d Dept 2011]. Upon review of the subject Agreement the provisions set forth therein are clear and unambiguous requiring no further investigation by the Court with respect to the parties' intent.
Article XVII of the Agreement pertains to the parties' understandings with respect to the manner within which the Agreement could be modified or a waiver could occur. This provision directed that no modification of the Agreement could occur except by a written document duly subscribed and acknowledged in the same formality as the Agreement and that no waiver would be deemed to have occurred in the event either party failed to insist on strict performance by the other of any terms within the Agreement. Accordingly, while Plaintiff has asserted that a reduction in spousal support has occurred and appears to waive payment of a portion of the spousal support amount due within the Agreement, the Court does not recognize any modification or waiver of the obligations of either party pursuant to the Agreement as no written Modification Agreement has been entered into by the parties pursuant to Article XVII. See, Jacobson v. Jacobson, 647 N.Y.S.2d 227, [2d Dept 1996].
The Court further finds that to the extent that Article XXIV of the Agreement sets forth a condition precedent to either party seeking Court intervention to address an alleged default of the other only following the services of a notice of default and failure to cure by the defaulting party, that such condition precedent has been met through Plaintiff's service of the Default Notices. See, U.S. Bank National Association v. Kissi, 197 N.Y.S.3d 534 [2d Dept 2023].
Accordingly, based upon the Court's review of Article XX, the Court determines Defendant has defaulted in his obligations to Plaintiff pursuant to this provision by failing to provide upon request proof of compliance with his life insurance obligations and authorizations permitting Plaintiff to obtain confirmation of compliance with his life insurance obligations from insurance carriers, employers and/or unions.
Based upon the Court's review of Article IX of the Agreement, the Court determines that Defendant has defaulted in his obligations to Plaintiff pursuant to Article IX of the Agreement by failing to pay Plaintiff spousal support and maintenance in the amount of $28,900.00.
Accordingly, it is hereby
ORDERED that by April 18, 2024, Defendant shall provide to Plaintiff: (1) proof of life insurance insuring Defendant's life in compliance with Article XX of the Agreement and Judgment of Divorce; and (2) authorizations fully executed by Defendant permitting Plaintiff to obtain confirmation of Defendant's compliance with Article XX of the Agreement and Judgment of Divorce, for any life insurance carrier or life insurance provider such as employers and/or unions; and is it further
ORDERED that this Court awards from Defendant to Plaintiff the sum of $28,900.00, as and for spousal support arrears, which shall be payable from Defendant to Plaintiff in the form of a certified check to be received in-hand by Plaintiff by April 18, 2024, and to the extent such funds are not received, Plaintiff shall have leave of this Court to file with Notice of Settlement a proposed Money Judgement for the unpaid portion of this award; and it is further
ORDERED that by April 22, 2024, Plaintiff shall serve by overnight traceable delivery a copy of this Decision and Order with a Notice of Enty and Affidavit of Service of same upon Defendant; and it is further
ORDERED that to the extent relief has been requested and not granted it is expressly denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: March 18, 2024
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.